IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LYNN NOYES, Plaintiff,

v.

KELLY SERVICES, INC., a corporation, Defendant.

2:02-cv-2685-GEB-CMK

ORDER

On February 4, 2008, Defendant moved to exclude the testimony of Plaintiff's expert Rick Ross under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993). (Mot., Dkt. No. 5.) Plaintiff opposes the motion. A Daubert hearing was held on March 17, 2008.[1] See Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) (holding Daubert reliability determination applies to all expert testimony).

///

[1] The hearing addressed, among other things, the following questions: (1) Is Mr. Ross qualified to testify as an expert in the field of destructive cults in general and of the nature, relationships and group dynamics of the Fellowship of Friends in particular? (2) Are Mr. Ross's opinions based on a sufficient, reliable foundation — sufficient facts, data or experience? Does he rely on materials of a type reasonably relied on by other experts in the field? (3) Is there a reasonable link between the information and procedures Mr. Ross uses and his conclusions? (Order, March 5, 2008.)

BACKGROUND

In 1995, Plaintiff was hired as a Software Developer in Defendant's Nevada City, California office. (Compl. ¶ 13.) Plaintiff alleges that William Heinz, Vice President in charge of the office, is a member of a small religious organization called Fellowship of Friends ("the Fellowship" or "FOF"). (Id. ¶ 16.) Plaintiff further alleges that in April 2001, "Defendant denied Plaintiff equal opportunity to compete for the position of Software Development Manager and selected another person who has lower qualifications who is also a member of the Fellowship." (Id. ¶ 27.) On December 18, 2002, Plaintiff filed a Complaint against Defendant alleging, *inter alia*, employment discrimination "because of Plaintiff's religion" in violation of Title VII of the United States Civil Rights Act of 1964, as amended Title 42, U.S.C. § 2000e *et seq*. (Id. ¶ 1.)

LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.[2] Rule 702 prescribes:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

District courts have a gatekeeping duty to screen expert testimony to ensure that it is relevant and reliable. Daubert, 509 U.S. at 597;

---

[2] All subsequent references to Rules are to the Federal Rules of Evidence.

Kumho Tire, 526 U.S. at 141. The proponent of expert testimony has the burden of establishing this foundation by a preponderance of the evidence. United States v. Gwaltney, 790 F.2d 1378, 1382 (9th Cir. 1986); Bourjaily v. United States, 483 U.S. 171, 175 (1987). The focus of the court is on whether Plaintiff meets her burden. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 595.

DISCUSSION

I. Field of Expertise

Defendant argues "Mr. Ross' field of expertise — the study of religious cults and coercive persuasion — [is], as a matter of law, insufficiently scientific to be presented to a jury." (Mot. at 4:24-5:1 (citing Daubert v. Merrell Dow Pharms. (Daubert II), 43 F.3d 1311, 1315 (9th Cir. 1995); United States v. Fishman, 743 F. Supp. 713, 716, 723 (N.D. Cal. 1990)).) Plaintiff rejoins she plans on having Mr. Ross testify on "the nature, relationships and group dynamics of the Fellowship" and "[e]xpert testimony is routinely admitted on the structures of businesses and organizations." (Opp'n at 11:5-7; 8:13-15 (citing United States v. Anderson, 446 F.3d 870, 875 (8th Cir. 2006)).) Plaintiff argues "Mr. Ross will give evidence about the Fellowship that will assist the jury in understanding [the Fellowship's] dynamics without testifying as to whether its adherents have been subject to [coercive persuasion]." (Opp'n at 7:20-23.)

Rule 702 does not require that all expert testimony be based on a science; it explicitly allows expert testimony to be based on "specialized knowledge." Fed. R. Evid. 702. Nonetheless, "the

discipline itself [must not] lack[] reliability, as for example, do theories grounded in any so-called generally accepted principles of astrology or necromancy." Kumho Tire Co., 526 U.S. at 151. Testimony must be "the product of reliable principles and methods . . . ." Fed. R. Evid. 702.

At the Daubert hearing on March 17, 2008, Mr. Ross gave testimony on the principles and methods of the study of controversial organizations and destructive cults. Mr. Ross testified there is no official discipline of cultic studies but there is a general consensus among a network of people who study cults (including academics, mental health professionals, and law enforcement officers) of the principles used to identify what makes a group a destructive cult. He testified that one of the seminal works in the field is a 1981 paper published by Robert J. Lifton, M.D. called Cult Formation, in which Lifton describes three defining criteria of destructive cults: (1) a living leader who becomes the object of worship; (2) a process of indoctrination and undue influence over members that leads to an inability to think independently; and (3) the group does some harm, such as financial exploitation. See Robert J. Lifton, M.D., Cult Formation, 7 The Harvard Mental Health Letter, no. 8 (Feb. 1981). Mr. Ross testified that another leader in the field was Margaret Singer, Ph.D., an adjunct professor of psychology at the University of California, Berkeley.

Mr. Ross further testified that when determining whether a particular group could be called a destructive cult, he uses the Lifton criteria, principles he learned from Dr. Singer and other basic warning signs. In making this determination, Mr. Ross relies on web sites that archive information about a group, court documents, reports

in newspapers, testimony of former members, and writings by the group itself. To make sure his opinions are accurate, Mr. Ross looks for an intersection of information in which these various sources corroborate each other. Ross testified that other experts in the field use similar principles and methods to support their opinions about destructive cults.

Defendant argues, relying on Fishman, 743 F. Supp. at 713, that Mr. Ross' field of study is insufficiently scientific. The Fishman court excluded expert testimony, based on "thought reform theories," that religious "cults overcome the free will of their members" through coercive persuasion. 743 F. Supp. at 716, 718, 720. However, Plaintiff rejoins that she will not elicit testimony from Mr. Ross on "thought reform and mind control and whether the fellowship uses it on its members." (Opp'n at 10:23-26.)

Evidence presented by Plaintiff at the Daubert hearing is sufficient to demonstrate that the study of destructive cults is not an unreliable discipline. See People v. Viera, 35 Cal. 4th 264, 307 (2005) ("[T]he subject of cult behavior [is] one beyond common knowledge and [can] suitably be addressed by an expert opinion."); Scott v. Ross, 140 F.3d 1275, 1285-86 (9th Cir. 1998) (discussing admission of expert testimony on the "history and general practice of deprogramming and the origin and practices of the 'anti-cult movement'"). In addition, the methods described by Mr. Ross are sufficiently reliable to support his proffered opinions on the structure and practices of FOF and satisfy the requirement in Rule 703 that data upon which the expert relies be "of a type reasonably relied upon by experts in the particular field." Fed. R. Evid. 703.

///

I. Expert Qualifications and Reliable Foundation

Defendant argues that Mr. Ross is not qualified to testify as an expert regarding the "Fellowship of Friends as well as the specific motivations of individual adherents, specifically about the motivation of former Kelly employee (and Ms. Noyes' supervisor) William Heinz . . . ." (Mot. at 6:7-11.) At the Daubert hearing, Plaintiff responded, notwithstanding opinions in Mr. Ross' expert report regarding what motivated Mr. Heinz, Mr. Ross will not provide those opinions at trial and his trial testimony will regard

> the group dynamics at the Fellowship of Friends. He's going to testify to the cohesiveness and group loyalty. He's going to testify to the strong dominance and authoritarianism of the leader of the group, and how that dictates behavior within the group, and attitudes, etc. He will testify to the religious nature of the group.

Defendant argues "Mr. Ross has no special educational background, skills or training. . . . He has also never been published by a scientific or peer review journal. . . . Mr. Ross has *never* been qualified in, or even retained for, *any* type of employment dispute *anywhere*." (Mot. at 6:13-7:1 (emphasis in original).) Defendant further argues that Mr. Ross "lacks foundation to testify here as required by [Daubert]" because "the sum total of Mr. Ross' 'expertise' about the Fellowship, derives from Mr. Ross' review of Ms. Noyes' [C]omplaint, his conversations with her counsel, and perusing of newspaper articles and anonymous 'blogs' on the internet." (Id. at 7:6-18.) Plaintiff rejoins that Mr. Ross "has specialized knowledge about the Fellowship of Friends [and] general knowledge about cults and controversial organizations . . . ." (Opp'n at 11:13-24.)

An expert may be qualified either by "knowledge, skill, experience, training or education." Fed. R. Evid. 702. Rule 702

"contemplates a broad conception of expert qualifications." Thomas v. Newton Int'l Enters., 42 F.3d 1266, 1269 (9th Cir. 1994). An expert need not possess a professional degree or certification. See United States v. Majors, 196 F.3d 1206, 1215 (11th Cir. 1999) (finding expert not required to be a certified accountant to testify as a financial expert). Expert testimony must rest on a "reliable foundation . . . ." Daubert, 509 U.S. at 597.

Defendant supports its argument that Mr. Ross is unqualified by citing United States v. Miller, 874 F.2d 1255, 1268 (9th Cir. 1989), in which the court held that an expert was unqualified to testify about KGB recruitment practices because he "lacked significant practical experience in the field and had not made any special study of the subject." However, Mr. Ross has made a "special study of the subject" of cults, including the Fellowship of Friends.[3] He has studied and researched controversial organizations and cults since 1982. In 1996, he founded the Ross Institute of New Jersey, an "organization devoted to public education and research regarding destructive cults, controversial groups and movements." (Expert Report at 1.) As the executive director of the Ross Institute, Mr. Ross monitors news stories, court documents and reports about controversial groups on a daily basis and archives such materials on the Ross Institute web site. He responds to phone calls and emails from concerned family members and former and current members of groups catalogued in his archive. Mr. Ross has been a consultant for law enforcement at the local and federal level and has lectured by

[3] The following summary is taken from Mr. Ross' expert witness report (Decl. of Robert Burch in Opp'n to Def.'s In Limine Mot. No. 1, Ex. 1 ("Expert Report")) and his sworn testimony at the Daubert hearing on March 17, 2008.

invitation at several universities. He has been "gathering information about the Fellowship of Friends specifically since 1996[;] archiving reports and articles at the Ross Institute database and additionally receiving and handling repeated complaints from families, former members and others concerned about the cult's activities." (Id. at 2.) This experience and knowledge is sufficient to allow Mr. Ross to give the testimony Plaintiff proffers subject to Rule 403 considerations. See Viera, 35 Cal. 4th at 307 (discussing trial court's finding that retired deputy sheriff was qualified to testify as expert on cults).

Mr. Ross bases his testimony about the "level and extent of FOF commitment regarding personal assets, income and labor" on "press reports, [and] the accounts of former and current members [given in] interviews. Dozens of families over the years have related the same consistent pattern of total commitment when discussing the group, its influence and impact upon a family member's life." (Expert Report at 2.) At the Daubert hearing, Mr. Ross also discussed relying on Dr. Singer's writing about FOF, pronouncements by FOF on their own web site, press reports about FOF, and court records from lawsuits in which FOF has been involved. Mr. Ross also conducted extensive interviews of two former prominent members of FOF in the mid 1990s.

This is a sufficient and reliable basis for the Ross opinions Plaintiff proffers, and, as discussed *supra*, Mr. Ross' sources are of a type reasonably relied on by experts in the field. See also United States v. Elkins, 885 F.2d 775, 786 (11th Cir. 1989) (holding expert in Libyan history could testify regarding who was the commander-in-chief of Libyan armed forces based on press reports.) In

addition, Mr. Ross' proffered opinions are reasonably linked to the information on which Mr. Ross relies.

III. Relevancy and Province of the Jury

Defendant argues "[t]he only relevant testimony is whether [Ms. Noyes] was qualified for the promotion and whether, in fact, Kelly purposefully denied her that promotion for an unlawful reason. Testimony concerning the Fellowship (and the beliefs, motivations and practices of its adherents) simply has no relevancy to this trial." (Mot. at 8:14-19.) Defendant further argues

> courts have long recognized that jurors are perfectly capable of assessing human motivations, and thus have excluded expert testimony regarding such topics. . . . Here, there is nothing remotely uncommon about the notion that an individual might seek to help another person from the same social, academic, religious or professional circle, among other groups.

(Id. at 9:10-20; 10:1-3 (citing Kotla v. Regents of the Univ. of Cal., 115 Cal. App. 4th 283, 293 (2004)).) Plaintiff rejoins that Mr. Ross' testimony is relevant: "Plaintiff alleges that she was denied the promotion in question because . . . William Heinz showed religious favoritism toward a fellow member of the Fellowship of Friends and discriminated against her for her non-membership. . . . [Therefore, t]he ultimate issue is whether [Plaintiff] was the victim of intentional discrimination." (Opp'n at 3:7-19.) Plaintiff argued at the Daubert hearing that "what Mr. Ross is testifying [to is] the nature of the religious organization in which Mr. Heinz and Mr. Jilesen, the person promoted to the job, shared common membership. Instead of just presenting evidence to the jury of common membership, we want to present some evidence to the jury of what was the nature of the organization in which the common membership exists" because

> common group membership . . . could motivate a person to discriminate in favor of a member and against a non-member in a hiring decision. It is likely however that most jurors will have no knowledge of the Fellowship of Friends . . . . Thus the average juror can be assisted in understanding the evidence in weighing the degree to which common membership could affect the motivation of a member who had hiring power over a member . . . .

(Opp'n at 4:23-5:6.)

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. An expert opinion may be admitted only "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702. "Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993).

Mr. Ross' testimony regarding the structure and practices of FOF will provide evidence from which inferences could be drawn that have probative value on Plaintiff's assertion that the promotion decision was motivated by religious discrimination based on FOF membership. The average juror would not be well versed in FOF's structure and practices. See United States v. Locascio, 6 F.3d 924, 937 (1st Cir. 1988) (upholding the use of expert testimony on "the structure and methods of organized crime families" because "jurors are not well versed" in the subject); Ams. United For Separation of Church & State v. Prison Fellowship Ministries, 432 F. Supp. 2d 862, 873-75 (S.D. Iowa 2006) (admitting evidence of "theological views and

practices" of para-church, mission-minded organization and "strong, associated characteristics" of Evangelical Christians) (rev'd on other grounds, 509 F.3d 406 (8th Cir. 2007)); United States v. Mulder, 273 F.3d 91, 101 (2nd Cir. 2001) (admitting evidence of structure, history and tactics of labor coalition). Therefore, this evidence is relevant and will assist the jury.

IV. Undue Prejudice

Defendant seeks exclusion of Mr. Ross' testimony under Rule 403 arguing "Mr. Ross' testimony about, among other things, 'destructive cults' and 'mind control,' are precisely the kind of evidence that will inevitably infect the jury's determination with passion and emotion." (Mot. at 1:14-28.) Plaintiff rejoins that Mr. Ross' testimony "will be highly relevant on the dynamics of the Fellowship of Friends from which certain motives and intentions, arising out of common membership, can be inferred [and] can be presented in a manner to assist the jury in understanding motive and intent without arousing undue prejudice." (Opp'n at 13:23-14:8.)

Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." "'Unfair' prejudice . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 Advisory Comm. Note (1972).

Defendant has not shown that Mr. Ross' proffered testimony on FOF's structure and practices should be excluded under Rule 403. However, evidence of Robert Burton's alleged sexual encounters has low probative value and is excluded.

Defendant also argues that Rule 403 is violated by Plaintiff's alleged strategy to "offend and prejudice the jury with the Fellowship's purported beliefs and characteristics while simultaneously associating Kelly with the Fellowship" because such evidence constitutes impermissible stereotyping in violation of the Ninth Circuit's ruling in Jinro Am. Inc. v Secure Invs., Inc., 266 F.3d 993, 1007 (9th Cir. 2001). (Mot. at 11:9-20.) In Jinro, the Ninth Circuit held that

> [a]llowing an expert witness in a civil action to generalize that most Korean businesses are corrupt, are not to be trusted and will engage in complicated business transactions to evade Korean currency laws is tantamount to ethnic or cultural stereotyping, inviting the jury to assume that the Korean litigant fits the stereotype.

266 F.3d at 1007. In Jinro, however, the Ninth Circuit recognized that testimony "about cultural traits or behavior . . . is not *inherently* prejudicial" and may be used as "informative testimony" so long as it is an "academic, non-inflammatory explanation" that is not "the kind of guilt-by-ethnic association testimony condemned by this and other courts."[4] Id. at 1009. It is clear that this Jinro

---

[4] In discussing this distinction with regards to religious stereotyping, the court stated

> in *Bains v. Cambra*, 204 F.3d 964 (9th Cir. 2000), we held that although testimony about Sikh religious attitudes towards marriage and divorce was proper to explain the defendant's motive to kill, the state prosecutor committed constitutional error by arguing such evidence showed "that *all* Sikh persons (and thus Bains by extension) are irresistibly predisposed to violence when a family member has been dishonored ... and also are completely unable to assimilate to and to abide by the laws of the United States." The prosecutor's "inflammatory" argument was "more a statement about the stereotypical 'nature' of a particular group

(continued...)

principle must be followed, but its application to Mr. Ross' proffered testimony is unclear at this point in light of how the Plaintiff limited the testimony Mr. Ross will give at trial.

SUMMARY

For the stated reasons, Defendant's motion to exclude the testimony of Plaintiff's expert Rick Ross is denied in part and granted in part.

IT IS SO ORDERED.

Dated: March 20, 2008

GARLAND E. BURRELL, JR.
United States District Judge

---

[4](...continued)

> rather than an explanation of the beliefs followed (to different degrees and in different ways) by some members of that group," thus inviting the jury impermissibly to infer that Bains was compelled to kill simply because he was a Sikh.

Jinro, 266 F.3d at 1007-08 (citations omitted).