IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
LYNN NOYES,                       )
                                  )
          Plaintiff,              )   2:02-cv-2685-GEB-CMK
                                  )
     v.                           )   ORDER
                                  )
KELLY SERVICES, INC.,             )
a corporation,                    )
                                  )
          Defendant.              )
                                  )
```

On May 7, 2008, Plaintiff Lynn Noyes ("Noyes") filed a motion in which she seeks $1,141,372.70 in attorneys' fees and costs under California Government Code section 12965(b).[1]  Defendant Kelly

---

[1] Specifically, Plaintiff seeks the following fees and costs:
```
Pre-Judgment Fees:
Jones:          1,255.75 hrs    at $350  =   $  439,512.50
Burch:          284 hrs         at $325  =   $   92,300.00
           Total Pre-judgment Lodestar:  =   $  531,812.00
                Times 2.0 Multiplier:    =   $1,063,625.00
Post-Judgment Fees:
Jones:          140.00           at $350  =   $   49,000.00
Burch           27.75            at $325  =   $    9,018.75
           Total Post-judgment Lodestar  =   $   58,018.75
           Total Attorneys' Fees         =   $1,121,643.75
           Litigation Expenses           =   $   19,728.95
           Total                         =   $1,141,372.70
```

1

Services ("Kelly") opposes the motion.  Oral argument on the Motion was heard on June 16, 2008.

## BACKGROUND

Noyes prevailed at a jury trial in this action on her claims that Kelly discriminated against her based on religion in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), and the California Fair Employment and Housing Act ("FEHA"), California Government Code section 12900 *et seq.*, when it did not promote her because she was not a member of a group called the Fellowship of Friends.  The jury returned a special verdict for Noyes on both claims and awarded Noyes $647,174 in compensatory damages and $5.9 million in punitive damages.  The punitive damage award was subsequently reduced to an amount equal to the compensatory damages.  (Order, Sept. 25, 2008.)

## ANALYSIS

### I. Entitlement to Fees

Noyes argues she is entitled to reasonable attorneys' fees because she is the prevailing party in this FEHA action.  (Mot. at 1:9-14.)  Kelly counters "prevailing parties are not entitled to recover attorneys' fees where 'special circumstances would render such an award unjust.'"  (Opp'n at 2:5-9 (quoting Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968)) (citing Serrano v. Unruh, 32 Cal. 3d 621, 635 (1982) ("A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.")).)  Kelly argues Noyes's "fee request shocks the conscience [because i]t is excessive and riddled with procedural and substantive defects, and should therefore be denied in its entirety."  (Opp'n at 2:11-12.)

In a FEHA action, the court "may award to the prevailing party reasonable attorneys' fees and costs, including expert witness fees . . . ." Cal. Gov. Code § 12965(b) ("§ 12965(b)"). "[A] prevailing plaintiff should ordinarily recover an attorney fee [under § 12965(b)] unless special circumstances would render such an award unjust." Cummings v. Benco Bldg. Servs., 11 Cal. App. 4th 1383, 1387 (1992) (internal quotations omitted). Here, Noyes is a prevailing party and there are no special circumstances that render an award unjust.

II. Lodestar Calculation

When determining the reasonableness of a fee request, "[f]irst, the court must calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable rate." Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000); see also Ketchum v. Moses, 24 Cal. 4th 1122, 1131-32 (2001) (approving lodestar method). "Second, a court may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000). Noyes argues her lodestar calculation of attorneys' fees is reasonable. (Mot. at 2:5.)

A. Reasonable Rate

Noyes has the "burden to produce specific evidence, other than the declarations of interested counsel, that [her] requested rates are in line with those prevailing in the community for lawyers with comparable skill and reputation. The burden . . . shift[s] to [defendant] to produce rebuttal evidence [if] Plaintiff meets her initial burden." Navarro v. Gen. Nutrition Corp., 2005 WL 2333803, at

3

*8 (N.D. Cal. Sept. 22, 2005) (citing Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987) and Spegon v. Catholic Bishop of Chi., 175 F.3d 544, 554 (9th Cir. 1999)) (emphasis omitted).

Noyes seeks an hourly rate of $350 for her counsel Catherine Jones and $325 for her counsel Robert Burch. (Mot. at 4:6-7.) Noyes argues these rates are "at the low end of the market rate for attorneys in the Sacramento area with [her counsels'] experience and skill[s]." (Mot. at 2:20-28.) Ms. Jones has over twenty years of experience as an attorney and for the past 18 years has focused exclusively on labor and employment law. (Jones Decl. ¶ 3.) Mr. Burch has extensive trial experience and is a former professor of evidence law. (Burch Decl. ¶¶ 2-3.)

In support of her requested fee rate, Noyes submits the declaration of Christopher Whelan ("Whalen"), a Sacramento attorney specializing in employment law since 1980. (Whelan Decl. ¶¶ 2,3.) Whalen declares that in a 2004 disability discrimination case, the Yolo County Superior Court awarded him an hourly rate of $475 and an hourly rate of $312 for his co-counsel who had only 4 years of legal experience at that time. (Id. ¶ 8.) Whalen further declares that the normal range for employment law attorneys with his experience in Northern California is an hourly rate of $450 to $500 and that the rates charged by Ms. Jones and Mr. Burch are within the range of fees charged in Northern California for attorneys with their level of experience and skill. (Id. ¶¶ 9, 11, 12.)

Noyes also submits the declaration of George Allen, a Sacramento attorney focusing on employment law. (Allen Decl. ¶ 4.) Mr. Allen declares that $350 is a "*minimum* reasonable hourly rate for an attorney of comparable experience [to Ms. Jones] in the Sacramento

4

area." (Id. ¶ 6.) Noyes also submits the declaration of Elisa Ungerman, an employment law attorney who in 2004, when she had 14 years of legal experience, was awarded a rate of $325 an hour in a Placer County case. (Ungerman Decl. ¶ 5.) Ms. Ungerman declares at that time, comparable hourly rates were between $350 and $470 in the greater Sacramento area. Id. She further declares that, with 18 years of experience, she currently charges an hourly rate of $350. (Id. ¶ 7.)

Kelly counters "the claimed rates . . . exceed the hourly rates recently approved in fee motions by several courts in the Eastern District of California." (Opp'n at 4:15-17.) Kelly relies on Wilson v. Haria & Gorgi Corp., 2007 WL 1795737, *4 (E.D. Cal. June 29, 2007), Martinez v. G. Maroni Co., 2007 WL 1302739, at *2 (E.D. Cal. May 2, 2007), and Martinez v. Thrifty Payless, Inc., 2006 WL 279309, at *3 (E.D. Cal. Feb. 6, 2006), which awarded fees of $250 an hour for experienced counsel. However, these cases do not involve the type of litigation at issue as they all involve awards in American with Disabilities Act litigation; therefore, they have not been shown comparable to Noyes's lawsuit. See, e.g., G. Maroni, 2007 WL 1302739, at *2 (holding rate was reasonable for cases "of this subject matter and complexity")

Kelly further argues "the most accurate comparison evidence is the rates actually billed and paid by defense counsel in the same matter," in other words in this lawsuit, which is $275 an hour for lead counsel and $210 for the associate. (Opp'n at 5:11-16.) However, Kelly's attorneys are located outside of this district, in San Diego, and, regardless, this evidence is not sufficient to rebut Noyes's showing that the rates she requests are within the range of

prevailing rates for attorneys with similar experience and ability in the Eastern District. Noyes has shown that the hourly rates she seeks are reasonable.

B. Hours Reasonably Expended

Kelly also argues that Noyes's fee request is inadequately documented because her "counsel has not submitted contemporaneously-prepared billing records [and] the submitted declarations and after-the fact billing summary do not constitute 'detailed time records justifying the hours claimed to have been expended.'" (Mot. at 6:3-25 (citing Wininger v. SI Mgmt. L.P., 301 F.3d 1115, 1126 (9th Cir. 2002)).) Noyes counters that she has "provided both a 'specific accounting' and 'reasonable figures.'" (Reply at 6:12-14 (citing Hogan v. Robinson, 2008 WL 151607, at *1 (E.D. Cal. Jan. 14, 2008)).)

Noyes "bears the burden of submitting detailed time records justifying the hours claimed to have been expended." In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1305 (9th Cir. 1994) (quoting Chalmers v. City of L.A., 796 F.2d 1205, 1210 (9th Cir. 1986)). "A plaintiff does not need to provide detailed descriptions of the time spent down to the minute, but the documentation has to be sufficiently specific to allow the court to conclude that the amount requested is reasonable." Sanford v. GMRI, Inc., 2005 WL 4782697, at *4 (E.D. Cal. Nov. 14, 2005) (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). "The minimum required for satisfaction of this burden is to list hours and identify the general subject matter of the time expenditures. Fee awards will be set aside where summaries make it very difficult to ascertain whether the time devoted to particular tasks was reasonable and whether there was improper overlapping of hours." Merrifield v. Miner's Inn Res. & Lounge, 2006 WL 4285241, at

1 *10 (E.D. Cal. Sept. 25, 2006) (citing Fischer, 214 F.3d at 1121 and
2 Intel Corp. v. Terabyte Intern., Inc., 6 F.3d 614, 623 (9th Cir.
3 1993)).
4           To support the hours requested for Ms. Jones, Noyes
5 submitted a table listing "Services Performed," "Dates" and "Attorney
6 Hours" which are summaries of contemporaneous time records.  (Jones
7 Decl., Ex. A.)  Noyes also submitted a declaration by Mr. Burch in
8 which he details the tasks he performed and the hours spent in a
9 narrative format.  (Burch Decl. ¶¶ 7-18.)  Although contemporaneous
10 records are preferred, it is a factual determination whether they are
11 absolutely necessary.  The Ninth Circuit has stated "that fee requests
12 can be based on 'reconstructed records developed by reference to
13 litigation files.'"  Fischer, 214 F.3d at 1121 (quoting United States
14 v. $12,248 U.S. Currency, 957 F.2d 1513, 1521 (9th Cir. 1992) and
15 Davis v. City & County of S.F., 976 F.2d 1536, 1542 (9th Cir. 1992)).
16 Noyes's documentation lists the hours worked and identifies the
17 general subject matter of the time spent by her counsel.
18           Kelly argues that Noyes's "sparse, reconstructed records"
19 "suggest that [her] counsel duplicated a substantial part of the trial
20 work in this case" such as working on motions *in limine* and trial
21 preparation.  (Opp'n at 9:3-22.)  If a case is "overstaffed and hours
22 are duplicated," the hours claimed may be reduced.  Chalmers, 796 F.2d
23 at 1210.  Noyes counters, when the demands of the case warrant more
24 than one attorney, "some duplication of work is both expected and
25 compensable."  (Reply at 7:17-20 (citing Margolin v. Reg'l Planning
26 Comm'n, 134 Cal. App. 3d 999, 1006-07 (1982) (indicating the court
27 engages in a fact finding determination whether the importance of the
28 issue justified some duplication)).)  Noyes further argues "Defendant

1  filed eight *in limine* motions.  Attorney Jones handled four of these
2  motions, Attorney Burch handled the other four.  Burch also wrote all
3  of the four motions *in limine* filed by Plaintiff."  (Id. at 8:4-8.)

4  Consideration of the documentation submitted by Noyes and of
5  Ms. Jones and Mr. Burch's respective roles in the courtroom reveals
6  each counsel performed distinct tasks; and, as to matters duplicated
7  at trial the duplicative efforts were justified; the hours claimed by
8  Noyes were reasonably expended.

9  III.  Enhancement of the Lodestar

10  Noyes argues she "is entitled to have the prejudgment
11  lodestar figure . . . adjusted upward by a multiplier of 2.0 in order
12  to bring attorney fees in line with the market value of the services
13  provided."[2]  (Mot. at 8:16-19.)  Kelly rejoins no evidence exists
14  justifying a multiplier.  (Opp'n at 10:12-17.)

15  "In FEHA cases, the . . . court has the discretion to apply
16  a multiplier or fee enhancement to the lodestar figure to take into
17  account a variety of factors . . . ."  Greene v. Dillingham Constr.
18  N.A., Inc., 101 Cal. App. 4th 418, 426-27 (2002) (citing Flannery v.
19  Cal. Highway Patrol, 61 Cal. App. 4th 629, 646 (1998)).  These factors
20  include "(1) the novelty and difficulty of the questions involved, (2)
21  the skill displayed in presenting them, (3) the extent to which the
22  nature of the litigation precluded other employment by the attorneys,
23  [and] (4) the contingent nature of the fee award."  Ketchum, 24 Cal.
24  4th at 1132 (citing Serrano v. Priest (Serrano III), 20 Cal. 3d 25, 49
25  (1977)).

---

[2]  Noyes "is not seeking a multiplier for time spent after the Judgment was entered because Plaintiff's entitlement to a verdict became fixed at that time."  (Mot. at 8:18-21.)

> The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.

Ketchum, 24 Cal. 4th at 1132.

### A. Novelty and Difficulty

Noyes argues she "had the burden of proving that Kelly Services was discriminating based on the relatively novel theory of 'reverse' religious discrimination." (Mot. at 10:23-25.) Kelly counters "Ms. Noyes cites no authority for the proposition that proving reverse-religious discrimination is any more complex or difficult than proving gender discrimination, for example." (Opp'n at 12:28-13:2.)

The theory of reverse religious discrimination had not been addressed by the Ninth Circuit before this action. See Noyes v. Kelly Servs., 488 F.3d 1163, 1168 (9th Cir. 2007) ("[W]e have not previously outlined the precise contours of a prima facie showing of reverse religious discrimination . . . ."). In addition, Kelly's offer to promote a non-fellowship employee to the position Noyes sought before Noyes was denied the promotion clouded Noyes's reverse discrimination claim and made it more difficult to prove. Therefore, Noyes's reverse discrimination theory had a degree of novelty and difficulty that justifies a fee enhancement.

### B. Skill Displayed

Noyes argues "the Court is in the best position to assess . . . the skill displayed by Plaintiff's attorneys [and] respectfully suggests that consideration of this criterion also supports an award

of the requested multiplier." (Mot. at 10:27-11:5.) Noyes further agues "despite the overwhelming disparity in resources between the two sides, . . . Plaintiff . . . ultimately obtained an award for actual, compensatory damages of over $647,000.00 plus punitive damages in the amount of $5.9 million. This is an excellent result in any discrimination lawsuit . . . ." (Mot. at 11:18-23 (citing Crommie v. Cal. PUC, 840 F. Supp. 719, 726 (N.D. Cal. 1994)).) Kelly counters Noyes "cannot[] claim that [the lodestar] amount will not fully compensate her attorneys for their efforts [and] the excessive and unconstitutional verdict does not favor enhancement." (Opp'n at 15:6-8.)

Noyes's counsel did not demonstrate exceptional skills "beyond those that might be expected of attorneys of comparable expertise or experience." Weeks v. Baker & McKenzie, 63 Cal. App. 4th 1128, 1176 (1998); see also Ketchum, 24 Cal. 4th at 1139 ("[A] trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill . . . ."). In addition,

> [e]nhancement may be appropriate when an attorney who obtained a significant result otherwise would receive but meager compensation. Where the attorney will be fully compensated for his or her efforts, however, the fact that the client receives a windfall in the form of punitive damages neither justifies paying the attorney an increased amount nor exacting an increased amount from the defendant.

Weeks, 63 Cal. App. 4th at 1176. Since Noyes's counsel are charging the hourly rate of experienced attorneys and will recover the full amount of the lodestar, Noyes has not shown that the results obtained justify a fee enhancement.

C.   Extent Other Employment was Precluded

Noyes argues "Ms. Jones has stated that she was prohibited from taking on any new matters during the first few months of 2008 due to her commitment to this case." (Mot. at 11:11-14 (citing Jones Decl. ¶ 27).) Kelly counters Noyes has not shown that "this litigation imposed significant financial hardship" on her counsel. (Opp'n at 14:9-12.)

Noyes has not shown that the fact her lead attorney had to "turn down the opportunity to be trial counsel in a Lassen County case set for trial" is sufficient to justify an enhancement. (Reply at 10:19-22); see, e.g., Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002) (according weight to the fact that class counsel was forced to "forgo significant other work, resulting in a decline in the firm's annual income"); In re Heritage Bond Litig., 2005 WL 1594389, at *15 (C.D. Cal. June 10, 2005) (awarding fees where lead counsel was entirely precluded from other work for three years and firm experienced diminished income). Accordingly, this factor does not justify an enhancement.

D.   Contingent Nature of the Fee Award

Noyes argues her "lead counsel accepted this case, and has litigated it for over five years, on a wholly contingent basis: if no monetary recovery is obtained, Noyes's counsel will not receive any compensation [for] the work she performed. Similarly, Mr. Burch also agreed to accept payment for his legal services on a contingency basis." (Mot. at 9:19-24.) Kelly counters this factor does not justify an enhancement because "plaintiff's attorneys in FEHA litigation bear less risk of non-payment than in other contingency

11

cases." (Opp'n at 11:8-9 (citing Weeks, 63 Cal. App. 4th at 1174-76).)

Kelly relies on Weeks, which denied an enhancement based on a contingency fee agreement "because of the availability of statutory fees" under FEHA. Weeks, 63 Cal. App. 4th at 1174-75. However, Kelly's reliance on Weeks is misplaced since Weeks was decided before the California Supreme Court ruled in Ketchum that

> [t]he economic rationale for fee enhancement in contingency cases has been explained as follows: "A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans." "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions."

Ketchum, 24 Cal. 4th at 1132-33 (quoting first Posner, Economic Analysis of Law 534, 567 (4th ed. 1992), quoting second Leubsdorf, The Contingency Factor in Attorney Fee Awards, 90 Yale L.J. 473, 480 (1981)). Since the California Supreme Court in Ketchum "reaffirmed that contingent risk is a valid consideration in determining whether to apply a fee enhancement in cases where attorney fees are authorized by statute," this factor may be considered when determining whether to utilize a multiplier. Greene, 101 Cal. App. 4th at 428-29 (remanding in light of Ketchum for consideration whether enhancement was justified).

Since Noyes's counsels' fees were contingent on her success in the action and were delayed for up to five years, an enhancement is required to provide the fair market value of their services. However, Noyes's request for a 2.0 multiplier is excessive since only one other

factor discussed above favors enhancement and FEHA's guarantee of attorneys' fees to a successful party reduces the risk of nonpayment somewhat. Therefore, Ms. Jones's fee will be multiplied by 1.4 and Mr. Burch's fee will be multiplied by 1.2. See, Wrysinski v. Agilent Techs., Inc., 2006 WL 2742475, at *28-31 (Cal. Ct. App. Sept. 27, 2006) (affirming trial court award of 1.4 multiplier for lead attorney and 1.2 multiplier for counsel assisting with motions *in limine* in FEHA action).[3]

IV. Expert Fees and Expenses

Noyes argues she "is entitled to recover all reasonable litigation costs, including expert witness fees [under § 12965(b)]." (Mot. at 13:23-25.) Kelly counters "a prevailing plaintiff in a FEHA action is not entitled to recover expert fees and costs as part of a post-judgment fee application, [and the other costs claimed], such as travel, copies, postage and the like . . . are an element of attorneys' fees and not properly a separate monetary component." (Opp'n at 17:18-27 (citing Davis v. KGO-T.V., Inc., 17 Cal. 4th 436, 446-47 (1998) and United Steelworkers v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990)) (emphasis omitted).) Noyes rejoins

> [a]lthough some California cases have limited recoverable "costs" to those included in Code of Civil Procedure § 1033.5, they have never held that parties may not recover the extra expenses as attorneys' fees. . . . The expenses sought are those which are normally billed to fee-paying

---

[3] In her Reply, Noyes argues she is requesting the "*current* (rather than historical) rate for all work performed based on the delay in payment. . . . However, care must be taken not to 'double count.' If the 'delay' factor is used to support a multiplier . . . , then counsel's request for fees needs to be modified so as to use a lower hourly rate for 2002 through 2005, which was $300.00 per hour, as compared to her current rate of $350.00," otherwise the delay factor will have been considered twice. (Reply at 3:21-4:2.) Kelly has not disputed this point.

13


>           clients, are not a part of counsel's normal
>           overhead expenses and most of the expenses were in
>           fact billed to [Noyes].

(Reply at 11:23-12:4.)

Section 12965(b) specifically prescribes that courts "may award to the prevailing party reasonable attorney's fees and costs, *including expert witness fees* . . . ." Cal. Gov't Code § 12965(b) (emphasis added). The expert witness fee provision was added by legislation in 1999, thus the authority on which Kelly relies that predates this legislation is inapposite. 1999 Cal. Legis. Serv. Ch. 591 (A.B. 1670). "[Reasonable o]ut-of-pocket litigation expenses are reimbursable as part of the attorneys' fee, distinct from the costs . . . award[able] to plaintiffs under 28 U.S.C. § 1920." United Steelworkers, 896 F.2d at 407; see also Velasquez v. Khan, 2005 WL 2397058, at *3 (E.D. Cal. Sept. 28, 2005) (awarding reasonable litigation expenses in addition to statutorily recoverable costs where such expenses "'would normally be charged to a paying client'" (quoting Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994))). The litigation expenses Noyes requests are reasonable.[4] Accordingly, Noyes is awarded the full amount of litigation expenses she requests in her attorneys' fee motion.

///
///

---

[4] Noyes filed a Bill of Costs under 28 U.S.C. § 1920 and Local Rule 54-292. (Dkt. No. 188.) Those costs are not included in the out-of-pocket litigation costs she seeks in her attorneys' fees motion. (Mot. at 13:22-14:4.) However, Noyes "requests payment of any unpaid expenses shown on [the] Bill of Costs." (Jones Decl., Ex. B (Costs Incurred by Plaintiff).) This request is construed as a motion to treat sought-after costs as out-of-pocket expenses recoverable as part of the attorneys' fee motion; therefore, it is denied since the attorneys' fee motion is determined herein.

## CONCLUSION

Plaintiff's Motion for attorneys' fees is granted in part. Plaintiff is awarded attorneys' fees and expenses in the amount of $765,972.70.[5]

IT IS SO ORDERED.

Dated: August 1, 2008

GARLAND E. BURRELL, JR.
United States District Judge

---

[5] The award is based on the following calculations:

| | | | | |
|---|---|---|---|---|
| Pre-Judgment Fees: | | | | |
| Jones: | 540.75 hrs | at $300 | = | $ 162,225.00 |
| | 715 hrs | at $350 | = | $ 250,250.00 |
| | Jones Pre-judgment Lodestar | | = | $ 412,475.00 |
| | Times 1.4 Multiplier | | = | **$ 577,465.00** |
| Burch: | 284 hrs | at $325 | = | $ 92,300.00 |
| | Times 1.2 Multiplier | | = | **$ 110,760.00** |
| | Total Pre-judgment | | = | **$ 688,225.00** |
| Post-Judgement Fees: | | | | |
| Jones: | 140.00 | at $350 | = | $ 49,000.00 |
| Burch | 27.75 | at $325 | = | $ 9,018.75 |
| | Total Post-judgment Lodestar | | = | $ 58,018.75 |
| | **Total Attorneys' Fees** | | = | **$746,243.75** |
| | **Litigation Expenses** | | = | **$ 19,728.95** |
| | **Grand Total** | | = | **$765,972.70** |